Jeanie E. Maddock, Respondent, *v.* George Steel, Appellant.

*Right of action for the dissolution of a partnership — estoppel to deny the relation of partners.*

The right of a person to maintain an action brought for the dissolution of an alleged partnership, and to an accounting therein, does not depend upon the interest which the plaintiff may have in the assets of the partnership, but depends upon the fact whether the relation existing between the parties is that of co-partners, and such fact is to be determined under the agreement entered into between them.

Where parties have agreed between themselves, for the purpose of avoiding a prohibition contained in a statute, that they are partners, they cannot come into a court of equity and claim that because the interest of one of the persons was not sufficient, that no co-partnership existed.

Appeal by the defendant, George Steel, in the above-entitled action, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of May, 1894, upon the decision of the court rendered after a trial at the New York Special Term, and also from an interlocutory judgment of the Supreme Court, entered in said clerk's office on the 19th day of June, 1894, resettling the former interlocutory judgment appealed from, and also a motion by the defendant for a new trial made on a case and exceptions at the General Term in the first instance.

The action was brought to obtain an adjudication dissolving a partnership of Maddock & Steel, appointing a receiver and directing an accounting.

*A. W. Kent*, for the defendant, appellant.

*F. W. Hinrichs*, for the plaintiff, respondent.

O'Brien, J. :

To present the questions intended for review the defendant has submitted a double record, substantially the same, but in form different, the one being a case and exceptions on a motion for a new trial, and the other a case on appeal from interlocutory judgments. As in either of these forms every question that the defendant seeks to raise is before us for review, we shall consider them, without reference to the distinct form in which they are presented, as though

embodied in a single record. Though the main question as to the status of plaintiff and her right to maintain this action was directly passed upon when this case was before this court upon a former appeal from an order continuing an injunction and appointing a receiver (see 68 Hun, 522), we are asked to review the question anew in the light of what are claimed to be some additional facts and a reference to the statutes affecting the use of co-partnership names, which counsel says were not brought to his notice at the time of the former argument or decision.

It appears that a firm, of which plaintiff's husband was a member, had conducted, for many years prior to 1887, the business of importers of and dealers in earthenware in New York, to which business the plaintiff's husband, by the retirement of the other member, succeeded in 1887. After continuing it until the fall of 1889, he determined to retire from business; but with a view to preserving the same, which had been found to be a business of profit and value, until such time as his son Sidney should become of age in January, 1893, he (and subsequently the plaintiff herself) entered into certain agreements with the defendant, who up to that time had been acting in the capacity of a clerk. Some of these agreements are alleged to have been oral, and three are in writing, defining the terms, conditions and limitations under which the business was to be conducted. Of the written agreements the first is dated September 1, 1889, and is as follows :

" Articles of agreement made on the first day of September, eighteen hundred and eighty-nine, between Henry Maddock and George Steel, both of Brooklyn, New York.

" For the considerations hereinafter set forth Henry Maddock agrees —

" To sell and transfer unto George Steel on the first day of January, 1890, the good will of the business now carried on by Henry Maddock in the city of New York, also the right to use the name of Maddock, either alone or jointly with his own name (so far as such right may be legally exercised), in conducting said business.

" To secure to George Steel from January first, 1890, the exclusive agency of Messrs. John Maddock & Sons, of Staffordshire, England, for the sale of their products within the United States on terms substantially similar to those now enjoyed by Henry Maddock.

" To lend to George Steel the sum of ten thousand ($10,000) dollars in cash, to be used as capital in the business, and to lend to him also such additional moneys from time to time as may be required, in the judgment of Henry Maddock, to properly conduct the business, and to indemnify George Steel against any losses in said business to the extent of one-half of such losses.

" For the considerations hereinbefore set forth George Steel agrees —

" To contribute ten thousand ($10,000) dollars in cash as capital, exclusive of said loans; to continue the business substantially as now conducted, and to devote his entire time thereto.

" To pay Henry Maddock interest at six per cent (6%) per annum on his advances, semi-annually.

" To employ Sidney Maddock in the business from the first day of January, 1890, and to pay him for his services sums of money equal to one-half of the net profits, after deducting interest on capital at six per cent per annum, which profits shall be determined yearly; and to admit him as an equal partner on the 26th day of January, 1893, upon his contributing to the capital a sum in cash equal in amount to that contributed by George Steel and then standing to his credit on the books.

" That he will not lend the funds, credits or effects of the business for private accommodation.

" It is mutually agreed :

" That George Steel and Sidney Maddock may, if they so desire, anticipate yearly profits to the extent of twenty-five hundred ($2,500) dollars each, and may draw that sum in monthly installments.

" That the usual books of account shall be kept, which shall be open always to the inspection of either party, and Sidney Maddock also.

" That the partnership name shall be Maddock & Steel.

" That in the event of the death of George Steel or Sidney Maddock the business shall be continued by the survivor, and the interests or profits which would have been enjoyed by the deceased hereunder shall be paid to his legal representatives from time to time until the termination of this agreement; provided, however, the survivor shall receive, in addition to his share of the profits, three thousand ($3,000) dollars yearly for his personal services,

which amount shall be charged to general expense account, and no profits shall in such case be anticipated.

" Witness the hands and seals of the parties hereto in the city of New York.

" Executed in duplicate.

" HENRY MADDOCK.   [L. S.]<br>
" GEORGE STEEL.      [L. S.]

" In presence of ———."

The other two in writing are both dated December 20, 1889, and are as follows :

" NEW YORK, *Dec. 20th,* 1889.

" WHEREAS, It is the desire of the parties to the foregoing agreement that the business therein set forth shall be conducted under the name of Maddock & Steel.

" And WHEREAS, It is doubtful whether the name of Maddock can be legally used until Sidney Maddock attains his majority and becomes a partner in 1893.

" And WHEREAS, Jeanie E. Maddock, wife of Henry Maddock, has consented to become a partner in the meantime.

" *Now, therefore,* For the purpose of enabling George Steel to carry on the business under the name of Maddock & Steel, Jeanie E. Maddock is hereby constituted a partner under said agreement until January 26, 1893, and her interest is hereby declared to be one-half of the compensation provided in said agreement to be paid to the said Sidney Maddock.

" HENRY MADDOCK.<br>
" GEORGE STEEL.

" Agreed to.

" JEANIE E. MADDOCK."

" NEW YORK, *December 20th,* 1889.

" All differences arising under the foregoing agreements of date September 1 and December 20, 1889, shall be determined by arbitration. Two arbitrators shall be appointed, one by George Steel and the other by Henry Maddock, and in the event of their failure to agree, such arbitrators shall select a third arbitrator, whose decision shall be final and binding upon the parties to the controversy.

" HENRY MADDOCK.<br>
" GEORGE STEEL.<br>
" JEANIE E. MADDOCK."

Subsequent to the date of this last agreement of December 20, 1889, each party arranged to carry out the terms of the agreements, and as a result the business and assets of the old firm were transferred to the new, so that the latter was in a position to begin business on the 1st of January, 1890, which was the date agreed upon by the parties. All the assets and good will of the old firm were turned over, the $10,000 agreed to be loaned by Henry Maddock was advanced, and the $10,000 additional which the defendant was to contribute to the capital was borrowed from his attorney, who had procured the same as a loan also from Henry Maddock. The business was thereafter carried on under the firm name of Maddock & Steel until the son became of age at the time fixed for the termination of the relation between plaintiff and the defendant, when the son declined to become a partner, and the affairs of the business being unsatisfactory, the plaintiff commenced this suit, claiming to be a partner and asking for the appointment of a receiver, an accounting and the winding up of the business.

The defendant insists now as throughout the litigation that the plaintiff was not a partner, and, therefore, had no status to maintain the suit, claiming in effect that her status was but that of a nominal partner, or at best a trustee with the defendant for the purpose of preserving the business until the coming of age of her son, when a partnership was to be formed. This theory that the relation was that of trustee is sought to be strengthened by reference to the allegations of the complaint, wherein it was charged that it was "intended by and orally agreed between the parties to said instrument that said Steel should simply conduct the business after said Henry Maddock's retirement on January 1, 1890, and during his said son's minority, in order to preserve the same, and should hold the same meanwhile in trust for a partnership to be formed of said defendant Steel and said Sidney Maddock, when the latter should have reached majority."

In this view it is insisted that there could not be a complete determination of the rights of the parties without the presence of Henry Maddock and the son Sidney, and that for this, and the additional ground that it is an anomaly for one trustee to sue the other for the purpose of dividing between them the property of their *cestui que trust*, the judgment should be reversed.

This argument of the appellant is founded upon a narrow and restricted view taken of the relations between the parties, and of the rights that were conferred upon the plaintiff by virtue of the agreements themselves. If there were only the original agreement of September first, there might be some force in appellant's position; because, although that speaks of a partnership, it is evident that the parties, thinking that the minority of the plaintiff's son was an insuperable obstacle to his entering into a partnership, determined to accomplish what could have been achieved by a partnership in another way, leaving a half interest in the business in such a condition that the son would succeed to the same upon his majority, and that during the interval the business would have the benefit of the name of Maddock as part of the firm title. The error of this last assumption was discovered when attention was called to the statutes preventing the use of fictitious names, and then followed the subsequent agreements, which we have given in full. It would be of no advantage to analyze and determine the exact relation established by the first agreement, because, in view of all the facts appearing, it is undisputed that a change was effected in the original arrangement by the agreements subsequently executed, and to determine what was the relation of the parties on the 1st of January, 1890, an examination is necessary of all the agreements, with the light thrown thereon by the surrounding circumstances and the conduct of the parties.

That the plaintiff and defendant were not trustees to preserve the property itself is evident from the nature of the business, which involved the sale of stock and the constant replenishing thereof, but the intention was to constitute an arrangement between the parties by which they could continue the business in such a way that the defendant would have a half interest and the Maddocks the other half interest until the son became of age, when he could enter into possession as a full partner with the defendant. In the meantime, both by the terms of the agreements themselves and the position of the parties with respect to creditors, it is clear both upon the facts and the law that their status was that of partners. As stated by this General Term upon the former appeal (68 Hun, 524): "The question as to the right of the plaintiff to maintain this action does not depend upon the interest that she may have in the assets of this

co-partnership, but it does depend upon the fact as to whether the relation existing between herself and Steel was that of co-partners. *This rests upon what was agreed between these partners.* For the purpose of avoiding the penalties of the statute preventing the use of the names of partners who were not interested in the business, this subsequent agreement was made, as appears upon its face, and business was conducted under it. Now, after the parties have agreed between themselves, for the purpose of avoiding a prohibition contained in a statute, that they are partners, certainly they cannot come into a court of equity and claim that, because the interest was not sufficient, therefore, no co-partnership existed."

Notwithstanding the argument based upon the wording of the statute relating to the use of fictitious names, and the claim that a nominal partnership complies with the statute, we find no reason for departing from our former view, which is strengthened and enforced by resort to the history of the statute in question. The original statute was chapter 281 of the Laws of 1833, and was the basis of section 363 of the Penal Code, which reads : " A person who transacts business, using the name as partner of one not interested with him as partner, or using the designation ' and company ' or ' & Co.,' when no actual partner or partners are represented thereby, is guilty of a misdemeanor." The original law of 1833 read : " No person shall hereafter transact business in the name of a partner not interested in his firm." And the change in the language in the Penal Code from " not interested in his firm " to " not interested with him as partner" seems clearly to be aimed against the evil of nominal partnership. Upon the law, therefore, there is no escape from the conclusion that the plaintiff was an actual partner. Apart, however, from this, and upon the facts, it appears that while she did not take an active part in the affairs of the business — being represented by her husband, who did — nevertheless, she was recognized throughout as the one who, together with the defendant, had the legal title to the assets and good will of the business. Thus her status, as correctly held by the judge at Special Term, gave her the right, upon proof of the acts complained of and in view of the condition of the firm, to maintain the suit for a dissolution, and the relief accorded was the natural sequence.

In such an action neither Henry Maddock nor his son Sidney

First Department, November Term, 1894. [Vol. 81.

were necessary parties to a complete determination. Henry Maddock never had or claimed any interest other than that of a creditor, and though the word "trust" is used in the complaint and spoken of by the parties as relating to the son Sidney, it must be taken in connection with the conceded facts as to its meaning. There was no intention expressed or implied to constitute the plaintiff and defendant trustees for the son Sidney, the purpose being to constitute a partnership between them, to the end that the business might be continued, and upon his majority that Sidney might take his mother's place as a partner in the firm. The son, as a matter of law, never acquired any actual interest in the assets or good will of the firm, nor had he any claim that he could enforce until he became of age ; and what claim he then might have had it is not necessary to determine, because it is eliminated from our consideration by the fact that when that event occurred, upon which any rights of his might be vested, he declined to take advantage of the agreement in his favor, entitling him to enter into the firm as a partner, and, therefore, had no interest that would embarrass an adjustment of the affairs of the co-partnership between those who alone were interested as between themselves and the creditors in having it wound up.

A more serious question presented is as to whether or not the moneys advanced by Henry Maddock in the shape of a loan were to the defendant personally or to the co-partnership. The original agreement provides for a loan to defendant of the sum of $10,000, "to be used as capital in the business, and to lend to him also such additional moneys from time to time as may be required, in the judgment of Henry Maddock, to properly conduct the business." The language thus used must be interpreted in the light of the situation of the parties at that time. This first agreement of September was directed to a situation in which there was an identity between the firm or business and the defendant personally ; and though it provided that the partnership name should be Maddock & Steel, it is conceded that it was not then contemplated that any of the Maddocks should enter as a partner, but that the son should enter the employ of the firm at a compensation equal to one-half of the net profits. As there was but one person having legal title to the assets and business, there was in reality no co-partnership.

This, however, was cured, as we have attempted to show, by the subsequent agreements between the parties; and when the identity between the defendant and the firm was severed, and he no longer constituted the entire firm, it is not logical to contend that the language applicable to the first condition is not to be construed in the light of the other agreements which effected a change in the condition itself. In other words, when the defendant had the entire business, a loan to him, to be used as capital in the business, was practically the same thing as a loan to the business; and that it was never contemplated that these should be personal loans becomes evident from the language that follows, which shows that the amounts in addition to the first that were to be advanced by Henry Maddock, depended upon his judgment as to their being essential for the proper conduct of the business. So far, therefore, as the $10,000 is concerned, and the other amounts advanced from time to time, we think the learned judge below was correct in holding that they were advanced to the partnership, and that Henry Maddock is a creditor of the firm and not of the defendant, personally.

In regard, however, to the $10,000 borrowed by the defendant of his attorney and placed in the business as a contribution to the capital, a different view is to be taken. No matter where the attorney got it, whether from Henry Maddock or not, it was a loan made by the attorney to the defendant, for which he was not responsible to Henry Maddock, and which Maddock could not claim as against the defendant or the business, but which was borrowed by the attorney, as it appears, upon security, and has since been paid to Maddock, and was contributed by the defendant after procuring it as his part of the capital. As to this amount, therefore, he is entitled to credit; and to that extent, and that only, do we think the findings should be corrected.

In addition to the principal questions which we have discussed, there are numerous exceptions pressed upon our attention relating to the admission or rejection of evidence, to findings and refusals to find, to refusals to dismiss, and finally an exception as to the refusal of the court to grant a postponement of the trial. It is unnecessary to go over in detail each and all of these, some of which are technically good, but not of sufficient importance to justify a reversal of the judgment, which, upon the facts appearing, was right, and if all.

that is claimed by the appellant were allowed, it would in no way affect the result.

For instance, if any serious question had been presented as to the effect of plaintiff's testimony if produced upon the trial, there might be some strength in the exception taken to the refusal of the court to grant a postponement of the trial in order to enable the defendant to produce and examine her. Assuming, however, that the defendant was not guilty of *laches* — which is by no means clear — and considering the other question as to the materiality and influence of anything that the plaintiff could testify to, the concession made by the plaintiff's attorney, that she did not in person participate in the business of Maddock & Steel, coupled with the finding upon the evidence that she did not personally contribute any capital, strengthened as much as her evidence could have done appellant's contention that she was but a nominal, as distinguished from an actual partner. In this state of the record her testimony was not very material, and as the defendant had not secured her attendance upon the trial or taken her testimony by commission, he had no legal ground of complaint.

Upon the records, therefore, we think that the motion for a new trial should be denied and the judgment affirmed, with costs, and appeal from original judgment dismissed, without costs.

Van Brunt, P. J., and Follett, J., concurred.

Motion denied, with costs. Judgment affirmed, with costs, and appeal from original judgment dismissed, without costs.